FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 01, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK LEROY D., | NO: 2:20-CV-00094-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 16. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney Bryant Sutton. The Defendant is represented by Special Assistant United States Attorney Leisa A. Wolf. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

Plaintiff Mark Leroy D.[1] protectively filed for disability insurance benefits on February 8, 2017, alleging a disability onset date of July 1, 2016. Tr. 183-84. Benefits were denied initially, Tr. 94-96, and upon reconsideration, Tr. 100-02. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on January 17, 2019. Tr. 28-71. Plaintiff was represented by counsel and testified at the hearing. *Id.* The ALJ denied benefits, Tr. 12-27, and the Appeals Council denied review. Tr. 1. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 62 years old at the time of the hearing. Tr. 32. He completed high school. Tr. 33. He lives with his wife. *See* Tr. 57. Plaintiff has work history as a construction worker, house painter, metal fabricator, and CNC mill operator. Tr. 34-37, 41. He testified that he could not go back to work because he gets very little sleep every night, and therefore cannot concentrate and has "zero energy"

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

during the day. Tr. 38-39. Plaintiff also reported that he did not have an issue with his previous employer due to "not sleeping"; rather, he was unable to keep working at that job after he sustained his shoulder injury when skiing. Tr. 60.

Plaintiff testified that he has restless leg syndrome "constantly," and cannot sit for more than 15 minutes before he has to move around. Tr. 52. He takes medication but testified that he has not had a "full night's sleep" in five or six years, and usually gets between three-and-a-half to four-and-a-half hours of sleep on an average night. Tr. 54-55. Plaintiff reported he has sleep apnea, did not tolerate the CPAP machine, and uses a mouth guard that is effective in reducing his symptoms. Tr. 58. He testified that his "back is stiff constantly"; he has back pain around a three or four out of ten all the time; once every six months he has a "flare-up" of back pain that is ten out of ten on a pain scale; and at the time of the hearing he was in the middle of a "flare-up" of back pain that he rated at a six out of ten. Tr. 62-65. Plaintiff reported that he spends three to four hours a day "up and down" from an easy chair and the couch. Tr. 67.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 1, 2016, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: restless leg syndrome; obstructive sleep apnea; chronic insomnia; a tear of right upper extremity supraspinatus tendon/adhesive capsulitis; and recurrent back strain. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) in so much as he has the capacity to lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours, and sit for a total of six hours, with normal breaks. The claimant is limited to

frequent push and/or pull with right upper extremity. He is limited to no climbing of ladders, ropes, or scaffolds. The claimant is limited to frequent crawling. He is limited to frequent reach in all directions with the right upper extremity.

Tr. 18. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a mill operator. Tr. 22. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2016, through the date of the decision. Tr. 23.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and

2. Whether the ALJ erred at step four.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the

severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 19.

### 1. Lack of Objective Medical Evidence

First, as to his claims of disabling back pain, the ALJ noted "few specific abnormal objective findings of ongoing back problems after the alleged onset date," and "few complaints in the record of back pain." Tr. 19. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). In support of this finding, the ALJ cited the results of the June 2016 x-rays of Plaintiff's cervical and lumbar spine that generally noted, without any comment as to severity, a "narrowing" of the cervical spine and "degenerative changes" in the lower lumbar spine. Tr. 19 (citing Tr. 319). Plaintiff does not challenge this finding with specificity in his opening brief; rather, as discussed in detail below, his argument is confined to the ALJ's finding that Plaintiff failed to pursue treatment for his alleged back pain. Thus, the Court declines to address this finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). The lack of corroboration of Plaintiff's claimed back pain by objective medical evidence was a clear, convincing, and unchallenged reason for the ALJ to discount Plaintiff's symptom claims. *See Burch v. Barnhart*, 400 F.3d 676, 680

(9th Cir. 2005) (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor).

### 2. *Failure to Seek and Comply with Treatment*

Second, the ALJ found that Plaintiff failed to seek treatment for his back pain, delayed treatment for shoulder pain, and failed to comply with treatment recommendations regarding his complaints of restless leg syndrome and insomnia Tr. 19-22. Unexplained, or inadequately explained, failure to seek or comply with treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

First, the ALJ found that, aside from ongoing chiropractic treatment, Plaintiff "did not receive any other regular treatment for his back, such as follow-up with an orthopedist. . . . [And he] also did not seek regular or frequent emergency intervention for back pain exacerbations." Tr. 20. Plaintiff generally argues that the ALJ "mischaracterized" the medical record by "referencing one note from 2016 and another from 2018, and then found that '[t]he claimant did not receive any other regular treatment for his back[.]' However, this completely ignores the more than 200 pages in the record of regular chiropractic treatment from January 2016 through December 2018." ECF No. 12 at 12 (citing Tr. 598-803). This argument is inapposite because the ALJ explicitly noted that "the only regular treatment [Plaintiff] sought for his back was chiropractic follow-up." Tr.

19.  However, the ALJ additionally found that "[h]is chiropractic notes were very similar from appointment to appointment and did not describe disabling symptoms. The objective findings from these notes were vague, noting areas of 'hypomobility' and 'mild hypertonicity.'"  Tr. 19 (citing Tr. 598-803 (uniformly noting that Plaintiff's "current treatment plan seems to be effective").  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  Moreover, regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to find that Plaintiff's failure to pursue treatment aside from "regular" chiropractic care, which included only vague objective findings and "very similar" notes across the entire course of treatment, was inconsistent with the severity of Plaintiff's claimed back pain.  Tr. 19.  "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."  *Burch*, 400 F.3d at 679.

Second, as to his shoulder injury sustained while skiing in February 2016, the ALJ noted that Plaintiff "delayed treatment initially for unknown reasons.  He was advised to pursue physical therapy for two to three months to allow the fracture to completely heal before considering surgical intervention.  Despite this advice, as of September 20, 2016, [Plaintiff] still had not tried formal physical therapy and was instead trying a home exercise program."  Tr. 20.  Plaintiff argues that "the record shows conflicting opinions from treatment providers about

whether to pursue surgical intervention or physical therapy in June 2016.  The fact

that [Plaintiff] chose to begin physical therapy (rather than surgical treatment) just

two months later should not be held against him, as (1) he was weighing his

options, (2) his fracture was healing; and (3) this does not constitute a significant

delay of time."  ECF No. 12 at 13 (citing Tr. 329, 334); see also ECF No. 17 at 2

(adding in his reply brief that this delay in seeking treatment should "not be held

against him" because "his disabling allegations are not related to his resolved right

shoulder issues").

However, the Court's review of the two records cited by Plaintiff in support

of this argument indicate that on July 7, 2016, Plaintiff was advised by physician

assistant, Mr. Greg McDonough, that he should consider surgical intervention after

an MRI revealed "moderate to high grade tearing" in his right shoulder.  Tr. 334.

However, Mr. McDonough also noted that he would "review the MRI with Dr.

Rossi tomorrow and we will progress with surgical intervention if he agrees with

my recommendation."  Tr. 334.  Subsequently, on July 8, 2016, according to the

second record cited by Plaintiff, Dr. Rossi reviewed the MRI and disagreed with

Mr. McDonough's suggestion, instead recommending that Plaintiff "pursue a

continued nonoperative approach for the next 2-3 months with physical therapy to

allow the fracture to completely heal before consideration of surgical

management."  Tr. 329.  Thus, despite Plaintiff's argument to the contrary, the

final treatment recommendation to Plaintiff was to pursue physical therapy for 2-3

months; however, as noted by the ALJ, Plaintiff delayed pursuing this treatment until September 21, 2016. Tr. 329, 349. Moreover, as discussed in detail below, upon pursuing the recommended treatment, the record clearly indicates that Plaintiff's right shoulder pain successfully resolved. Tr. 20-21 (citing Tr. 424, 429, 439, 441, 449, 451, 456-58, 466 (x-ray indicating healing greater tuberosity fracture without displacement), 541 ("shoulder pain is actually resolved at this point"). Based on the foregoing, it was reasonable for the ALJ to consider Plaintiff's failure to comply with recommended treatment for his right shoulder pain as a reason to discount the severity of his symptom claims. *See Orn*, 495 F.3d at 638.

Third, as to his restless leg syndrome and sleep complaints, the ALJ found that Plaintiff "repeatedly" delayed treatment and failed to follow treatment advice and recommendations. Tr. 21-22. In support of this finding, the ALJ first noted that "[m]ost of [Plaintiff's] more recent sleeping difficulties appear to be tied to his use of Oxycodone, which he was repeatedly advised to stop taking. . . . He was placed on Oxycodone in May 2015. By August 2015, [Plaintiff] stopped taking his Oxycodone because he was advised that it might be affecting his sleep cycles and causing him to not get a refreshing sleep." Tr. 21 (citing Tr. 576, 586). The ALJ also found that Plaintiff "continued to use Oxycodone even though he reported in March 2017 that he had good prior response to Neupro and the possibility was raised of restarting this medication"; and it was noted in October 2018 that

Oxycodone was "suspected" to be interrupting his REM sleep, but Plaintiff was very resistant to discontinuing the medication." Tr. 21-22 (citing Tr. 500, 918, 929). However, as noted by Plaintiff, subsequent treatment records confirm that neupro "failed" to control his restless leg syndrome, in addition to the failure of the drugs gabapentin, klonopin, mirapex, requip, and sinemet; and despite treatment providers' observations that oxycodone was impacting his ability to sleep, Plaintiff consistently was prescribed oxycodone throughout the relevant adjudicatory period, and it was noted to be "effective in controlling his restless leg syndrome." ECF No. 12 at 13-14 (citing Tr. 540-41, 918 (transitioning from oxycodone to methadone in 2018), 933-34); Tr. 473, 520, 530.

The Court declines to hold Plaintiff accountable for an alleged failure to decline a medication that, while not without side effects, was consistently prescribed and noted to be the only effective treatment in controlling his claimed impairment of restless leg syndrome until, as discussed below, his restless leg syndrome improved with the use of methadone. Based on the overall record, the Court finds that Plaintiff's ongoing use of oxycodone throughout the relevant period, standing alone, does not rise to the level of substantial evidence to support a finding that he failed to comply with treatment recommendations. However, any error is harmless because the ALJ's ultimate rejection of Plaintiff's symptom claims based on his failure to comply with treatment recommendations was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

First, the ALJ noted evidence that Plaintiff was "struggling with CPAP compliance," and repeatedly failed to follow up with diagnostics as to optimize his CPAP use.  Tr. 21-22 (citing Tr. 313, 499-500, 541).  Plaintiff fails to challenge this finding with specificity in his opening brief; thus, the Court may decline to address the issue.  *See Carmickle*, 533 F.3d at 1161 n.2.  In his reply brief, Plaintiff briefly notes that he testified that the CPAP "dries out my sinuses, my throat, my lips, my tongue – everything so bad, that I can't wear one.  So now I wear a mouth guard that moves your lower jaw slightly forward, and it helps to keep your airways open. . . . Maybe it's not as good as a CPAP would be, but it's – I'm not waking myself up, choking or snoring anymore."  ECF No. 17 (citing Tr. 58).  Pursuant to Social Security Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.  However, Plaintiff's personal preference to stop using the CPAP is not an adequate explanation as to why he failed to follow up with recommendations from his treating providers in order to adequately address his claimed impairment of sleep apnea.

Second, the ALJ noted that Plaintiff's medical providers advised him to pursue behavioral health care for his sleep issues, but Plaintiff repeatedly declined.

Tr. 21-22 (citing Tr. 541, 906, 918 (recommending "strongly" that Plaintiff pursue behavioral health for counseling "to help address some of his underlying issues with regard to his insomnia"), 929). Plaintiff argues this "is not a legitimate reason to discount his testimony, as Plaintiff has not alleged any mental health impairments or symptoms in his DIB application or testimony." ECF No. 12 at 14. This argument is inapposite. As specifically noted by the ALJ in support of this finding, Plaintiff's treating providers recommended that Plaintiff pursue behavioral health treatment for possible "underlying issues" with his ability to sleep, not for any claimed mental health impairments. Thus, it was reasonable for the ALJ to consider Plaintiff's refusal to comply with recommended health treatment as a reason to discount his symptom claims.

Based on the overall record, and regardless of evidence that could be considered more favorable to Plaintiff, the ALJ properly discounted Plaintiff's symptom claims due to his repeated failure to seek and comply with treatment advice for his claimed impairments of back pain, shoulder pain, restless leg syndrome, and sleep issues. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation).

3. *Improvement*

Third, the ALJ found that successful treatment of Plaintiff's back pain, shoulder pain, and restless leg syndrome, was inconsistent with Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms."

Tr. 19-21.  A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). In support of this finding, the ALJ cited treatment notes indicating that (1) Plaintiff's back pain was "responding well to treatment and his functioning improved"; (2) there was "quick and progressive improvement" of Plaintiff's shoulder pain after initiating physical therapy, and a 2018 treatment note indicated Plaintiff's shoulder pain had "resolved"; and (3) there was an "immediate" improvement in Plaintiff's restless leg syndrome and insomnia after transitioning from oxycodone to methadone in November 2018.  Tr. 20-22 (citing Tr. 360, 365, 385, 424, 429, 434, 441, 451, 541 (shoulder pain is "resolved"), 638, 787-93 (describing "temporary worsening" of back pain but still noting his "treatment plan seems to be effective"), 933-34 (improvement in restless leg syndrome and insomnia)).

Plaintiff fails to address the evidence of improvement cited by the ALJ in his opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issues not raised with specificity in Plaintiff's opening brief).  In his reply, Plaintiff argues (1) there was "exacerbation of back pain," and cites one October 2018 chiropractic treatment note that identifies restricted range of motion, "muscle

guarding/spasms," multiple subluxations, and "acute aggravation" of pain in Plaintiff's back; and (2) he "suffered severe symptoms from [restless leg syndrome]/sleep impairments throughout the vast majority of the relevant time period, with ineffectiveness of numerous medications," and "there is no indication his November 2018 improvement [in his restless leg syndrome and insomnia] was permanent." ECF No. 17 at 4-6 (citing Tr. 780). However, the ALJ's decision includes consideration of relevant evidence from the adjudicatory period, including "temporary worsening" of Plaintiff's back pain in 2018, and the failure of medications Plaintiff was prescribed in order to treat his sleep issues and restless leg syndrome. Tr. 19-21 (citing Tr. 541, 787-93). Moreover, regardless of evidence that could be interpreted more favorably to the Plaintiff, it was reasonable for the ALJ to conclude that evidence of improvement in Plaintiff's claimed impairments was inconsistent with his allegations of incapacitating limitations. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation). This was a clear, convincing, and largely unchallenged reason for the ALJ to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.[2]

## B. Step Four

At the fourth step of the sequential evaluation process, Plaintiff has the burden "to prove that he cannot perform his prior relevant work either as actually

---

[2] The ALJ additionally "[did] not find [Plaintiff's] other impairments of restless leg syndrome, obstructive sleep apnea, and chronic insomnia to be disabling because [Plaintiff] was able to work with the conditions before the alleged onset date. His prior diagnostic sleep study was administered as early as 2008 and revealed moderate sleep apnea. [Plaintiff] continued to work for about eight years thereafter until he had his skiing accident." Tr. 21 (citing Tr. 312). However, as noted by Plaintiff, "his last work consisted of accommodated employment, as he called out from work multiple times per month on average due to lack of sleep and extreme fatigue in 2015." ECF No. 12 at 14. Moreover, Plaintiff's work history and activities prior to the alleged onset date are of limited probative value. *See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Regardless, as discussed in detail above, any error is harmless because the ALJ's ultimate rejection of Plaintiff's symptom claims because he failed to comply with treatment recommendations was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

performed or as generally performed in the national economy." *Carmickle*, 533

F.3d at 1166 (citing *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)

(internal quotation marks omitted)).  Past relevant work is work that was "done

within the last 15 years, lasted long enough for [claimant] to learn to do it, and was

substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a).  Here, at step

four, the ALJ found that Plaintiff was capable of performing past relevant work as

a mill operator.  Tr. 22.  More specifically, the ALJ found that Plaintiff

> reported working for a mill from March 2000 to June 2002, again from
> October 2002 to January 2004, and again from September 2011 to July
> 2012.  Thus, [Plaintiff] performed such work within the last 15 years at
> his most recent mill job.  This job has an SVP level of six, which
> requires one to two years of experience.  While [Plaintiff] performed
> this work for less than one year within the last 15 years, he has over
> four years of experience at this job overall (see DI 25005.015 directing
> that '[i]f any portion of the period the claimant performed past work
> extends into the relevant 15-year period, the work is in the relevant
> period.  If it meets the other criteria for PRW, consider it at step 4 of
> the sequential evaluation.').  [Plaintiff] earned $13,354.70 from this job
> in 2012, which is over substantial gainful activity for the entire year
> even though [Plaintiff] only worked until July 2012.  Thus, [Plaintiff's]
> job as a mill operator meets all three requirements of past relevant work.

Tr. 22-23 (citing Tr. 188, 204-10).

Plaintiff argues that DI 25005.015 "concerns a continuous period of one job

extending into the 15-year time period, with the following example: 'The claimant

worked as a cashier from 01/20/96 to 12/10/2000.  If the DDS adjudicates the case

on 1/20/15, the claimant's cashier job is within the relevant period.'  The instant

case is readily distinguishable, as [Plaintiff] worked as a mill operator for an

isolated timeframe (September 2011 to July 2012) of less than one year during the relevant 15-year period. The ALJ is incorrect to add on [Plaintiff's] remote mill operator jobs from March 2000 to June 2002 and October 2002 to January 2004, and nothing in DI 25005.15 suggests the ALJ's determination is proper." ECF No. 12 at 17 (citing DI 25005.015). The Court finds this argument unavailing for several reasons. As an initial matter, while the POMS—an internal agency manual—is "entitled to respect," it "does not impose judicially enforceable duties on either this court or the ALJ." *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) (citations and internal quotation marks omitted). Regardless, the Court finds that the ALJ properly found that the mill operator job satisfies the requirements for past relevant work because it was done within the last 15 years, lasted long enough for Plaintiff to learn to do it, and qualified as substantial gainful activity. 20 C.F.R. §§ 404.1565(a).

First, despite any argument by Plaintiff to the contrary, the ALJ plainly did not err in finding that the September 2011 to July 2012 "portion" of the period that Plaintiff worked as a mill operator "extends" in to the relevant 15-year period, thereby satisfying the first requirement for past relevant work because it was done within the past 15 years. Second, and unchallenged by Plaintiff, the ALJ properly found that the $13,354.70 that Plaintiff earned from this job in 2012 was well over substantial gainful activity for the entire year "even though Plaintiff only worked until July 2012." Tr. 23. Third, and finally, the ALJ found that Plaintiff has "over

four years of experience at his job overall," including the work he did just prior to the relevant 15-year period, from March 2000 to June 2002, and from October 2002 to January 2004. Tr. 22. The entirety of Plaintiff's argument appears to rest on whether the ALJ properly included Plaintiff's mill operator work from before the relevant 15-year time period in evaluating whether Plaintiff's work as a mill operator lasted long enough for him to learn to do it, because, as noted by the ALJ, the position of mill operator is an SVP level of six, which requires one to two years of experience. ECF No. 12 at 17; Tr. 22. However, as noted by Defendant, the same authority cited by Plaintiff in support of his argument instructs the ALJ to "[c]onsider work performed prior to the relevant period to be [past relevant work] when there is a continuity of skills, knowledge, and work processes between the work outside the relevant period and [past relevant work]." ECF No. 16 at 17 (citing POMS DI 25005.015 ("work lasted long enough for the claimant to learn the job if he or she learned the techniques, acquired information, and developed the facility needed for average performance of the job."); *see also* Social Security Ruling 82–62 at *2 (Jan. 1, 1982), *available at* 1982 WL 31386 ("The 15-year guide is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is not applied. . . . [I]n some cases work performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations.")).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23

Plaintiff fails to acknowledge this instruction from the same authority cited in his opening brief, and in his reply only generally contends, without citation to the record, that there is "no continuity of skills, knowledge, or work processes between [Plaintiff's] mill operator jobs." ECF No. 17 at 9. Moreover, the Court notes that at the hearing Plaintiff recounted the physical requirements and duties associated with the mill operator job, including the type of machine used, a step-by-step outline of how he used the machine, the specific material he used and how it changed during the operation of the machine, the posture he assumed while doing the job, the hazards he faced in doing the mill operator job, and the safety measures in place to prevent the risk of harm. Tr. 45-50. Based on the foregoing, the Court finds no error in the ALJ's finding that Plaintiff's mill operator job satisfied the requirements of past relevant work.

Finally, Plaintiff contends that "even assuming *arguendo* that the mill operator job could count as past relevant work, the [vocational expert's] testimony that [Plaintiff] could perform such work as actually performed was erroneous, as [Plaintiff] later testified that the job consisted of being '[p]retty much on your feet all day,' and the ALJ limited [Plaintiff] to six hours of standing/walking in an eight hour day." ECF No. 12 at 17-18. Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray,* 554 F.3d at 1228 (citation and quotation marks

omitted).  However, as discussed in detail above, the ALJ's rejection of Plaintiff's symptom claims was supported by the record and free of legal error.  Moreover, the Court notes that Plaintiff failed to offer any treating or examining medical opinion evidence in support of his claims.  The ALJ gave "great weight" to the only medical opinion evidence in the record, the state agency reviewing opinions, and this finding was not challenged by Plaintiff.  Accordingly, the hypothetical posed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record.  The ALJ did not err at step four.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony, and did not err at step four.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is

   **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** July 1, 2021.

_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Judge